**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTT and BEVERLY CANDRIAN, husband and wife, and SCOTT and BEVERLY CANDRIAN on behalf of RS INDUSTRIES, INC., an Iowa Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RS INDUSTRIES, INC., an Iowa Corporation, PERRY HINTZE, STANLEY HINTZE, TIM HINTZE, JEFF HINTZE, TODD HINTZE, GREG HESTER, and KEVIN CONKLIN,<br><br>Defendants. | No. CIV 13-088-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Application for Temporary Restraining Order with Notice, Preliminary Injunction, Appointment of Receiver, and Request for Court-Directed Mediation (Doc. 7) and the Motion to Dismiss TRO Application (Doc. 13) filed by Defendant RS Industries, Inc.

*Factual and Procedural Background*

RS Industries, Inc. ("RS") is the parent company and sole owner of The Ryan Group, Inc. ("Ryan"), in Davenport, Iowa, and Sun Mechanical Contracting, Inc. ("Sun"), in Tucson, Arizona. The retirement of the largest RS shareholder, Plaintiff Scott Candrian ("Candrian"), is scheduled for August 2013. Candrian alleges that, under the agreements between the shareholders of RS, Candrian's shares are to be purchased by RS and the shares distributed

among the company and the current shareholders.

Candrian asserts that Senior Shareholder and self-proclaimed RS President Perry Hintze, and a minor, non-voting shareholder Kevin Conklin (and other defendant shareholders) are conspiring to circumvent the agreements with Candrian and fabricate justification for not compensating Candrian his fair share upon retirement, calculated to be worth approximately $7,000,000.00, and are unilaterally acting to subvert the authority of the rest of the Board of Directors and individual shareholders to further their own personal agenda.[1]  Candrian alleges that the individually-named Defendants are:

1.  Engaging in secret business deals through RS entities without informing Candrian or the other shareholders.

2.  Barring RS Chief Financial Officer and shareholder Tom Peters from his office at the Ryan headquarters.

3.  Interrupting four key shared RS employees' access to the RS network and accounting system.  As a result, the Chief Financial Officer, the Director of Human Resources, the Director of Administrative Services, and the IT Manager are unable to perform their duties for RS, Ryan, and Sun. (Candrian also alleges that his access has been interrupted.)

4.  Subverting the authority of the RS IT Manager, Aaron Meyers ("Meyers"), who takes directions from the board of directors.  (Candrian asserts the IT Manager was threatened with being fired (by Stan Hintze) or having criminal charges brought against him if he interfered with individually-named Defendants' efforts to control the server and accounting system (by Hintze and Conklin).)

5.  Intimidating Meyers and the Director of Administrative Services, Bonnie Dana ("Dana") to prevent them from accessing the RS accounting system or server, which access is necessary for Meyers and Dana to perform their work for RS, Ryan, and Sun.  (Candrian alleges that Conklin told Meyers it would be illegal for Meyers to make any changes to the server without authority from Hintze, and if Meyers did anything without instructions from Hintze, Conklin would "take it to the next level."  Hintze told Dana that if she tried to access the server, she would be subject to criminal and civil liability for "unauthorized computer access, misappropriation of trade secrets, copyright infringement, and/or trespass to computer systems under applicable federal and state law.")

Candrian alleges that the consequences of these actions include:

1.  Without access to both the Chief Financial Officer and the RS accounting system and server, the Director of Administrative Services, Bonnie Dana, is impotent to perform crucial aspects of her job including:  procuring insurance for RS, Ryan,

---

[1]The Declaration of Conklin states that he is a voting stockholder of RS. Doc. 15-1, p. 5.

- 2 -

  and Sun employees; procuring workers' compensation coverage for each entity; and obtaining bonding required before the companies can begin projects.

  2. Without the Chief Financial Officer in place, and Perry Hintze trying to take over his authority, the Company's bank, U.S. Bank, has asked for concerted direction from the RS Board of Directors, including Candrian, because the Defendants' actions have created confusion and uncertainty.

Candrian also alleges that a regularly-scheduled RS Board meeting was cancelled by Hintze because of Hintze's work load and a special meeting of the RS Board of Directors and Shareholders has been called by Hintze to take place in Iowa on March 11, 2013. "Based on the agenda for the special meeting, it is believed the meeting, if held, will result in significant and material changes to the way RS has operated, and will result in the termination of the RS Chief Financial Officer and an intentional deprivation of the share value Scott Candrian is due at retirement in August 2013." Appl. for TRO, p. 6. A request by Candrian to postpone the meeting because of his work load has been denied.

  On February 12, 2013, Plaintiffs Scott and Beverly Candrian, as husband and wife, filed a Complaint (Doc. 1) seeking a Declaratory Judgment and an Accounting from RS. On March 1, 2013, Plaintiffs Scott and Bevery Candrian, as husband and wife and on behalf of RS Industries, Inc., filed an Amended Complaint (Doc. 5) seeking a declaratory judgment, an order for an accounting, the appointment of a receiver, and alleging claims of ultra vires acts, breach of fiduciary duty, breach of covenant of good faith and fair dealing, and defamation.

  An Application re: for Temporary Restraining Order with Notice, Preliminary Injunction, Appointment of Receiver, and Request for Court Directed Mediation (Doc. 7) has been filed by Plaintiffs. Defendant RS has filed a Motion to Dismiss TRO Application (Doc. 13). Evidence and argument were presented to the Court on March 6-7, 2013.

*Temporary Restraining Order Standard*

  Injunctive relief is an equitable remedy. "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803 (1982). Injunctive relief is not

1  automatic: "In each case, a court must balance the competing claims of injury and must
2  consider the effect on each party of the granting or withholding of the requested relief.
3  Although particular regard should be given to the public interest . . . a federal judge sitting
4  as chancellor is not mechanically obligated to grant an injunction for every violation of law."
5  *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 107 S.Ct. 1396, 1402
6  (1987). The standard for issuing a TRO is the same as that for issuing a preliminary
7  injunction. *See Brown Jordan Int'l, Inc. v. The Mind's Eye Interiors, Inc.*, 236 F.Supp.2d
8  1152, 1154 (D.Haw.2007).

9  Because a preliminary injunction is an extraordinary remedy, the moving party must
10 carry its burden of persuasion by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968,
11 117 S.Ct. 1865 (1997); *City of Angoon v. Marsh*, 749 F.2d 1413 (9th Cir. 1984).

12 To obtain injunctive relief, a moving party must show either "(a) probable success on
13 the merits combined with the possibility of irreparable injury or (b) that [it] has raised serious
14 questions going to the merits, and that the balance of hardships tips sharply in [its] favor."
15 *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir.2003). The Ninth Circuit has
16 explained that "these two alternatives represent 'extremes of a single continuum,' rather than
17 two separate tests. Thus, the greater the relative hardship to the moving party, the less
18 probability of success must be shown." *Immigrant Assistant Project of Los Angeles County*
19 *Fed'n of Labor (AFLCIO) v. INS*, 306 F.3d 842, 873 (9th Cir.2002), citation omitted.

20

21 *Likelihood of Success*

22 Only a reasonable probability of success, not an overwhelming likelihood, is all that
23 need be shown for preliminary injunctive relief. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422
24 (9th Cir. 1991). In this case, Plaintiffs have alleged Defendants are seeking to avoid a
25 contractual obligation regarding the terms of his retirement. Further, the parties have each
26 alleged unethical conduct and actions not in the interests of RS, Ryan, and Sun committed
27 by each opposing side. Resolution of these disputes will necessarily require a review of
28 business records. Plaintiffs have requested an Accounting, but at this time the Court cannot

ascertain which claims, if any, will be corroborated by the records. Additionally, the contradictory claims of each party justifying their actions (e.g., conduct by Candrian committed with knowledge of Tom Peters, defense claims actions were taken pursuant to an investigation of Candrian) requires not only credibility determinations but consideration in light of any supporting documents. Plaintiffs' claims are bolstered by supporting declarations. However, during the hearing, counsel for Plaintiffs stated something had been "brewing" since the end of December. This may support Defendants' claims that they recently learned of the misappropriation of funds. The Court also considers that Candrian's expenses were documented, Defendants have not been transparent in the efforts to investigate Candrian, and that Bruce Beach ("Beach"), who has served as an advisor to the advisory board since 2003 and whose firm has viewed and audited financial statements of RS, testified that he had no knowledge that Tom Peters had participated in any financial improprieties. The Court finds that Plaintiffs have shown a likelihood of success of their claims.

As to Plaintiffs' claims regarding the modification agreement, it also appears there is a likelihood of success on this claim. Indeed, Beach testified that the difference between the advisory board and the Board of Directors is not significant. The approval of the modification plan by the advisory board supports a conclusion that there is a likelihood of success by Candrian on these claims. Further, actions were taken pursuant to that agreement (e.g., Candrian testified that he has received benefits from the agreement).

*Irreparable Injury*

The issuance of a preliminary injunction is only appropriate "when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. V. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). Additionally, Plaintiff must "demonstrate immediate threatened harm." *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Moreover, where requested injunctive relief is based on past wrongs, a plaintiff must show there is a real and immediate threat he or she will be wronged again. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665

1  (1983).

2  Economic damages are not traditionally considered irreparable because the injury can
3  later be remedied by a damage award. *Cal. Pharmacists Ass'n v. Maxwell Jolly*, 563 F.3d
4  847, 852 (9th Cir.2009), *modified on other grounds*, *quoting Sampson v. Murray*, 415 U.S.
5  61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Although there may be a likelihood of success
6  by Candrian as to his claims regarding the modification agreement, the Court finds that no
7  *irreparable* harm will result from these claims – rather, any injuries related to these claims
8  can be remedied by a damages award.

9  Although the Court has determined that Plaintiffs have shown a likelihood of success
10 as to the misconduct claims, the Court does not find that a significant showing has been
11 made. Therefore, a sliding scale requires a higher degree of irreparable harm be shown. *See*
12 *e.g. United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174, 175 (9th Cir.
13 1987). The testimony established that actions of Defendants may affect the businesses (e.g.,
14 ability to acquire additional contracts, reputation of Candrian, reputation of businesses,
15 ability to conduct business with other entities including banks). However, this case does not
16 present a situation where, *based on the evidence*, the Court can conclude that there is a
17 substantial danger that laws will be broken if a TRO is not issued. *See e.g. Pridgen v.*
18 *Andresen*, 891 F.Supp. 733 (D.Conn. 1995). Rather, it is just as likely that the failure to issue
19 injunctive relief could result in lawful conduct as the lawful conduct that may result from the
20 issuance of a TRO. Indeed, although Plaintiffs have submitted/discussed cases that involve
21 maintaining the status quo and/or taking steps to stop illegal or unethical conduct, *Prudential*
22 *Real Estate Affiliates, Inc. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000); *Shepard v. Patel*,
23 2012 WL 6019036 (D.Ariz. 2012); *Haggiag v. Brown*, 728 F.Supp. 286 (S.D.N.Y. 1990);
24 *AHI Metnall, L.P. by AHI Kansas, Inc. v. J.C. Nichols Company*, 891 F.Supp. 1352
25 (W.D.Mo. 1995), this case involves allegations of unethical conduct on both sides.

26 Nonetheless, because of the irreparable harm that may immediately result from failing
27 to provide injunctive relief, the Court finds it appropriate to grant limited injunctive relief.

28

1 *Balance of Hardships*

2     Plaintiffs argue that if an injunction is not granted, RS is subject to gross
3 mismanagement and self-dealing by some of the directors without board approval and that
4 Defendants have no legitimate rights to protect.  However, RS argues that Candrian has
5 misappropriated corporate funds.  Defendants, however, had not demonstrated that
6 maintaining the employment status of Candrian or the duties or access of Sun employees will
7 in any way harm RS, Sun, or Ryan.

8     In light of the possibility of harm to Plaintiffs and the businesses if Candrian's
9 employment status is modified, the Court finds Plaintiffs have shown that the balance of
10 hardships tips in favor of a granting a TRO.

11

12 *Public Interest*

13     Plaintiffs also argue that there is public interest in issuing injunctions to maintain the
14 status quo for claims of accounting and dissolution of partnerships. *Shepard v. Patel*, 2012
15 WL 6019036 at *5.  Plaintiffs assert that the injunction would only affect the parties, and
16 would simply prevent Defendants from violating the RS Articles of Incorporation, bylaws,
17 and fiduciary duties. *See id.* (where an injunction's reach is narrow and affects only the
18 parties, the public interest will be at most a neutral factor in the analysis rather than one that
19 favors granting or denying the preliminary injunction).  Here, the injunctive relief
20 contemplated by the Court is narrow and will only affect the parties and their affiliates. The
21 Court finds this factor is neutral.

22

23 *Conclusion of TRO Analysis*

24     Although Plaintiffs have shown there may be a likelihood of success as to the
25 contractual claims, they have not shown that irreparable harm will result if a TRO is not
26 issued as to those claims.  However, Plaintiffs have shown that there is a likelihood of
27 success as to the misconduct claims and that irreparable harm may result if injunctive relief
28 is not granted.  Further, a balancing of the hardships tips in favor of granting a TRO.

Because actions taken by Defendants may affect the day-to-day operations of RS, Ryan, and Sun, and may harm Plaintiffs and the businesses, the Court finds limited injunctive relief to be appropriate. The Court finds it appropriate to permit Defendants to conduct their business as they determine in the businesses' best interests at this time. In other words, Defendants may determine to proceed with the shareholder and/or board of director meetings, terminate any RS or Ryan employees if within bylaws, and continue to investigate any financial irregularities.[2] However, the Court will order Defendants to not modify the employment status of Candrian and will order that Candrian, Sun, and Sun's employees shall continue to have the historical access to RS and Ryan systems (including servers, networks, and information technology) that was permitted prior to the filing of the original Complaint in this case.

This injunctive relief being issued as a TRO on short notice and with little time to prepare, the Court will set this matter for further hearing on the request for a preliminary injunction.[3] It is anticipated that, at that time, not only will Plaintiffs be afforded an opportunity to present any additional evidence they choose, but Defendants will have an opportunity to present evidence. At that time, the Court will determine whether to cease, continue, or expand the injunctive relief. The Court will also schedule the pending motions for the appointment of a receiver and court-ordered mediation for additional argument. This will permit the filing of a response and a reply.

If the parties mutually agree to mediation, they shall so notify the Court. In that event, the Court will continue the hearing on the aforementioned issues pending resolution of the mediation.

---

[2] The Court does not find it appropriate to enjoin Ryan from terminating a employee. Therefore, the Court is specifically not enjoining Ryan from terminating Peters. However, the Court also does not find it appropriate to enjoin Plaintiffs or Sun from hiring Peters if they so choose.

[3] The Court will block its calendar for one day, 10:00 a.m. - 5:00 p.m. If counsel anticipated the hearing lasting longer than that time, he/she shall so notify the Court's staff.

- 8 -

*Setting of a Bond*

Plaintiffs request that no bond or a minimal bond be required because there is no cost to Defendants in ceasing to violate the RS Articles of Incorporation and bylaws. *See Conn. General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (A "district court has wide discretion in setting the amount of a bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction."); *see also Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (district court did not abuse discretion by issuing preliminary injunctions without requiring moving party to post bonds where there was "no proof of likelihood of harm" to the party enjoined); *Am. Fed'n & Mun. Emples., Local 3190 v. Maricopa County Bd.*, 2007 U.S. Dist. LEXIS 18356, *58-59 (D. Ariz. Mar. 13, 2007) (Because the "purpose of such a bond is to cover any costs or damages suffered by the [enjoined party] arising from a wrongful injunction," the district court has discretion to waive the bond requirement where the issuance of a preliminary injunction will not likely result in damages to the enjoined party).

The Court has determined that it is appropriate to only grant at this time some of the injunctive relief requested by Plaintiffs. The Court declines to set a bond at this time, but may revisit this issue with the consideration of the Preliminary Injunction.

*Motion to Dismiss TRO Application*

Defendant RS requests that the Court dismiss the TRO Application. The Court does not find dismissal of the application to be appropriate and will deny the request.

Accordingly, IT IS ORDERED:

1. Plaintiffs' Application for Temporary Restraining Order with Notice, Preliminary Injunction, Appointment of Receiver, and Request for Court-Directed Mediation (Doc. 7) is GRANTED IN PART. The Court will issue the Temporary Restraining Order as a separate Order.

2. Defendants' Motion to Dismiss TRO Application (Doc. 13) is DENIED.

3.     This matter is set for evidentiary hearing on the Application for Preliminary Injunction and argument on the requests for an appointment of a receiver and court-ordered mediation on March 26, 2013, at 10:00 a.m.

DATED this 7th day of March, 2013.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge

- 10 -