**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTT and BEVERLY CANDRIAN, husband and wife, and SCOTT and BEVERLY CANDRIAN on behalf of RS INDUSTRIES, INC., an Iowa Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>RS INDUSTRIES, INC., an Iowa Corporation, PERRY HINTZE, STANLEY HINTZE, TIM HINTZE, JEFF HINTZE, TODD HINTZE, GREG HESTER, and KEVIN CONKLIN,<br><br>Defendants. | No. CIV 13-088-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss (Doc. 42), Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 78), Plaintiffs' Motion for Status Conference (Doc. 76), and Plaintiff's Motion for Limited Expedited Discovery and to Schedule a Rule 26(f) Planning Conference and a Rule 16(b) Case Management Conference (Doc. 79). Limited oral argument was presented to the Court on October 16, 2013.

I. *Factual and Procedural Background*

Pursuant to a stipulation of the parties, a Second Amended Complaint ("SAC") was filed by Plaintiffs Scott and Beverly Candrian ("the Candrians") on March 19, 2013. The SAC seeks (Count 1) a declaratory judgment as to whether a contractual modification requires Sun Mechanical Contracting, Inc. ("Sun") to give Scott Candrian ("Candrian") Sun's

profits for the portion of 2013 before Mr. Candrian's retirement above $1.1-1.3 million dollars and whether a contractual modification requires RS Industries, Industries, Inc. ("RS") and/or its shareholders to buy Candrian's shares as set out in the modification, (Count 2) an accounting of the RS financial records, (Count 3) injunctive relief preventing *ultra vires* acts. (Count 7) the appointment of a receiver, and (Count 8) a declaratory judgment of whether Stan Hintze ("S. Hintze") is a director of RS and whether any issue voted on by the directors on March 11, 2013 is valid. The SAC also alleges claims of (Count 4) a breach of fiduciary duty, (Count 5) a breach of the covenant of good faith and fair dealing, and (Count 6) defamation.

On March 25, 2013, Defendants filed a Motion to Dismiss (Doc. 42). A response and a reply have been filed.

On May 21, 2013, this Court denied the Candrians' request for a Preliminary Injunction.

On July 1, 2013, the Candrians filed a Motion for Status Conference (Doc. 76).

On August 26, 2013, the Candrians filed a Motion for Leave to File Third Amended Complaint ("TAC") (Doc. 78) and a Motion for Limited Expedited Discovery and to Schedule a Rule 26(f) Planning Conference and a Rule 16(b) Case Management Conference (Doc. 79). Responses and replies to these motions have been filed.

II. *Motion for Leave to File Third Amended Complaint* (Doc. 78)

The Candrians have requested leave to file a TAC that includes revised and clarified general allegations, eliminated some claims, revised the shareholders' derivative claim, and requests additional declaratory relief. The Candrians assert, if leave is granted, the TAC would supersede the SAC.[1]

---

[1] Generally, an amended complaint supersedes the original complaint and the original complaint is thereafter treated as non-existent. *Armstrong v. Davis,* 275 F. 3d 849, n. 40 (9th Cir. 2001); *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 869 F.2d 1542, 1546 (9th Cir. 1989). However, where an amended complaint does not cure the defect, a court may

- 2 -

1    In determining whether an amended pleading should be permitted, "[f]ive factors are
2 frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2)
3 undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether
4 [the Candrians] has previously amended [their] complaint." *Allen v. City of Beverly Hills*,
5 911 F.2d 367, 373 (9th Cir. 1990). It is the consideration of prejudice to the opposing party
6 that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052
7 (9th Cir. 2003).

8    Although the Candrians have previously amended their complaint, *see Moore v.*
9 *Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (failure to cure deficiencies
10 by previous amendments is factor to be considered), the Court finds the Candrians are not
11 acting in bad faith. Additionally, although the parties have briefed Defendants' Motion to
12 Dismiss, this Court has not yet imposed a deadline for the filing of a motion to amend a
13 pleading and any amendment would not cause any delay in discovery – the Court finds the
14 Candrians have timely requested the amendment and the Court does not find there is any
15 undue delay.

16   Additionally, the Court considers that "generally a party will not be deemed
17 prejudiced by an amended pleading if the amendment relates to the same conduct,
18 transaction, or occurrence alleged in the original pleading, or if the opposing party is
19 otherwise aware of the facts contained in the amended pleading." 61A Am. Jur. 2d Pleading
20 § 724, *citations omitted*. The Court finds the proposed amendments as set forth in the TAC
21 involve conduct related to the conduct stated in the original complaint.

22   Nonetheless, Defendants argue that leave to file the TAC should be denied because
23 it will preempt a ruling on a pending dispositive motion. However, this case does not present

---

25 consider a pending motion to dismiss. See Schwarzer, Tashima and Wagstaffe, *Federal*
26 *Procedure Before Trial*, ¶ 9:262 (The Rutter Group 2011) ("An amended complaint supersedes the prior complaint as a pleading . . . Thus, the court will usually treat the motion
27 to dismiss as mooted. It may, however, proceed with the motion if the amendment does not cure the defect."). The Court, therefore, will consider whether the TAC cures the asserted
28 defects in determining whether grant to the Motion for Leave to File TAC.

- 3 -

a situation where a summary judgment motion, after discovery, is pending, *see e.g., Schlacter-Jones v. General Telephone*, 936 F.2d 435, 443 (9th Cir. 1990), or where the Candrians had been granted leave to amend twice before, *see e.g. Wade v. Hopper*, 993 F.2d 1246 (7th Cir. 1993). In this case, the Candrians once amended their complaint as of right and once amended their complaint pursuant to the stipulation of the parties. The Court finds Defendants would not be prejudiced by permitting the amended pleading.

III. *Motion to Dismiss* (Doc. 42)

Defendants assert the SAC fails to plead sufficient facts to meet the *Twombly/Iqbal* standard; fails to plead facts in support of, or allege, personal jurisdiction over the individual nonresident defendants; fails to plead or meet the requisites for a derivative claim; fails to comply with Rule 8(a); asserts claims subject to arbitration; and is otherwise legally deficient.

A. *Personal Jurisdiction*

Defendants argue in the Motion to Dismiss that this Court does not have personal jurisdiction over the individual Defendants. In fact, Defendants assert that additional allegations in the TAC cannot support the Candrians' assertion this Court has personal jurisdiction over the individual Defendants. However, the Court finds it appropriate to consider whether this Court has personal jurisdiction over the individual Defendants. *See e.g., Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828 DOC (RNBx), 2010 WL 4961702 * 4 n. 1 (C.D.Cal. 2010) (an amended complaint may establish a *prima facie* case of personal jurisdiction). The Ninth Circuit Court of Appeals has recognized that the Court may permit different types of evidence in determining whether personal jurisdiction exists. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977); *see also Pope v. Elabo GmbH*, 588 F.Supp.2d 1008, 1014 (D.Minn. 2008) (plaintiff seeking to make *prima facie* showing may "present affidavits or other evidence outside of the pleadings"); *Spacey v. Burgar*, 207 F.Supp.2d 1037 (C.D.Cal. 2001) (court examines entirety of the record before

1  it to determine whether a proper basis for personal jurisdiction has been shown).

2  When no federal statute specifically defines the extent of personal jurisdiction, courts look to the law of the state where the district court sits. *Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007). Arizona's long-arm rule permits the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the United States Constitution. *Id.* The Arizona and federal rules are identical, as Arizona's long arm statute "provides for personal jurisdiction co-extensive with the limits of federal due process." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir.1997), *citation omitted*; *see also* Ariz. R. Civ. P. 4.2(a). "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe*, 112 F.3d at 1050, *citing Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "In the context of general jurisdiction, minimum contacts exist where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, even if the case is unrelated to those contacts." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163 (9th Cir. 2006), *citations omitted*. Specific jurisdiction may be exercised over a non-resident defendant if: (1) the defendant purposefully directs his activities to the forum or a resident thereof; or performs some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir.2009).

22  Where a defendant has moved to dismiss for lack of personal jurisdiction, the burden of proving jurisdiction falls on the plaintiff. *Menken*, 503 F.3d at 1056. If the court adjudicates the motion based on written materials rather than an evidentiary hearing, plaintiff need only make a prima facie showing of adequate personal jurisdiction to survive the challenge. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Rio Prop.'s, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). The court must assume as true all uncontroverted facts in the complaint and must interpret all

1 evidentiary disputes in plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800
2 ("[U]ncontroverted allegations in the complaint must be taken as true ... Conflicts between
3 parties over statements contained in affidavits must be resolved in the plaintiff's favor.").

4 Arizona considers the individual contacts of corporate officers in determining whether
5 personal jurisdiction exists. *Davis v. Metro Productions, Inc.*, 885 F.2d 515 (9th Cir. 1989),
6 *citing McPherson v. Taglione*, 158 Ariz. 309, 762 P.2d 596 (App. 1988) (where corporate
7 president directed activities to Arizona and corporate agent solicited business – which was
8 subsequently concluded in Michigan – corporate president was subject to Arizona's
9 jurisdiction). Here, the Candrians' SAC alleges a Ryan Group, Inc. ("Ryan") agent came to
10 Tucson, Arizona, and approached Sun about forming a new organization. Ryan is an Iowa
11 corporation, wholly owned by S. Hintze, Timothy Hintze ("T. Hintze"), Jeffrey Hintze ("J.
12 Hintze"), Perry Hintze ("P. Hintze"), Todd Hintze, and Arlie Hintze (collectively, "the
13 Hintzes") until July 2003. The SAC further alleges that "[t]he Ryan shareholders proposed
14 the entities merge so both entities would be wholly-owned subsidiaries of a new corporation,
15 Ryan-Sun Acquisitions, Inc. Ryan proposed that such a merger would provide the Sun
16 shareholders, Plaintiffs, a means to eventually retire and would provide a purchaser for Sun
17 upon Scott Candrian's retirement." SAC, p. 3. The TAC alleges:

> 12. Perry Hintze is President of Ryan, and the Individual Defendants are all Ryan officers, Ryan employees, and/or RS shareholders.
>
> 13. Until July 1, 2003, Ryan was wholly owned by the Hintze Defendants and Arlie Hintze (now deceased).
>
> 14. In 2002 and 2003, Ryan representatives came on multiple occasions to Sun's headquarters in Tucson, Arizona, to discuss a proposal to reorganize Sun and Ryan so that both corporations would become wholly-owned subsidiaries of a new parent holding corporation, RS.
>
> 15. The reorganization plan was proposed by Ryan and the Hintze Defendants to enable them to expand their business operations beyond Ryan's current market in and around Davenport, Iowa.
>
> 16. Under the proposed reorganization plan, the Hintze Defendants and the Candrians would become the sole shareholders of RS for a period of ten years.

27 TAC, pp. 3-4. In other words, the Candrians have alleged in the TAC that the Hintzes, as the
28 owners of Ryan directed its actions to Sun and Candrian in Arizona. The Court finds it

- 6 -

1 appropriate, for purposes of determining whether personal jurisdiction has been adequately
2 alleged, to consider the allegations in the TAC because leave to amend should be freely
3 granted when justice so requires.[2] Just as the corporate president in *McPherson* directed the
4 activities to Arizona, even though subsequent substantial activities occurred in the home
5 state, the directions of the owners of Ryan which ultimately resulted in the agreement with
6 Sun and Candrian sufficiently establishes personal jurisdiction of this Court over the Hintzes.

The Candrians assert personal jurisdiction over Kevin Conklin ("Conklin") and Greg Hester ("Hester") because they became shareholders of RS and signed agreements. However, the Candrians have not pointed to any specific agreements signed by Conklin and Hester and have not provided any authority that simply being a signatory to unidentified documents warrants the exercise of personal jurisdiction. *See e.g. Burger King v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts within the other party's home forum, we believe the answer is clearly that it cannot."). The Candrians have not alleged "prior negotiations and contemplated future consequences, along with the terms of [a] contract and the parties' actual course of dealing[,]" *id*. at 475-76, involving Conklin or Hester which show either purposely availed themselves of conducting business in Arizona. Moreover, conduct occurring after the filing of the initial complaint does not provide a basis for this Court to exercise personal jurisdiction over Conklin or Hester. *See Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) ("visit occurred after the filing of the complaint in [the] action so it cannot establish jurisdiction").

The Candrians also assert Conklin waived personal jurisdiction by the submission of an affidavit in support of RS's efforts to contest the imposition of injunctive relief. However, for an appearance to waive a personal jurisdiction defense there must be "an overt act by

---

[2] The proposed TAC includes a verification of Scott Candrian; however, the verification is not signed. The Court will direct Plaintiffs to file a signed TAC.

- 7 -

which the party comes into court and submits to the jurisdiction of the court. This is an affirmative act involving knowledge of the suit and an intention to appear." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986); *see also Dr. JKL Ltd. v. HPC IT Education Center*, 749 F.Supp.2d 1038 (N.D.Cal. 2010). While the Motion to Dismiss was filed on behalf of all Defendants, the Motion to Dismiss TRO was filed on behalf of RS alone.

In other words, although the Candrians argue that this constitutes consent to the Court's jurisdiction by Conklin, it cannot be said that the actions of Conklin (who did not file the affidavit) amounted to a legal submission to the jurisdiction of the Court. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704-05 (1982). Rather than making a general appearance in this case and affirmatively requesting relief, *see e.g., Davis v. Davis*, 230 Ariz. 333, 284 P.3d 23 (App. 2012) (where party requested appointment of special master, appeared at a hearing, agreed to provide documents, and filed multiple documents without raising personal jurisdiction, party consented to Arizona's jurisdiction); Conklin did not make an appearance in this case until the filing of the Motion to Dismiss was filed on his behalf. In considering the substance of Conklin's conduct and the circumstances of injunctive proceedings and filings, *Tarr v. Superior Court in and forPima County*, 142 Ariz. 349, 690 P.2d 68 (1984), the Court finds the attachment of Conklin's affidavit (by RS) to the Motion to Dismiss TRO does not constitute a waiver of personal jurisdiction by Conklin.

The Court finds neither the SAC nor the TAC adequately allege sufficient facts for this Court to exercise personal jurisdiction over either Conklin or Hester.[3]

---

[3]As discussed *infra*, the Court finds dismissal based on the agreement of the parties to arbitrate is appropriate. The Court's determination of its lack of personal jurisdiction over Conklin or Hester is not a statement as to whether they are appropriate parties to arbitration. *See e.g. Johnson v. Mitchell*, No. CIV S–10–1968 GEB GGH PS, 2012 WL 1594204 *3 (E.D.Cal. 2012) (discussion of whether agreement to arbitrate is consent to personal jurisdiction).

- 8 -

B. *Short and Plain Statement, Twombly/Iqbal Standard, Shareholder Derivative Claim, and Declaratory Relief*

As discussed *infra*, the Court finds it appropriate to dismiss the Candrians' claims based on the agreement of the parties to arbitrate. Whether the Candrians may proceed on any claim will appropriately to determined by the arbitrator. *See e.g.*, *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172, 174-75 (9th Cir. 1983) ("Under federal law, when parties agree to submit disputes to arbitration, it is presumed that the arbitrator will be authorized to determine all issues of law and fact necessary to resolve the dispute. [Citations omitted.] Thus, the arbitrator has authority to determine the applicable law."); *PPG Industries, Inc. v. Pilkington plc*, 825 F.Supp. 1465, 1473 (D.Ariz. 1993) (merits of the claims are left to the arbitrator). The Court, therefore, declines to address Defendants' arguments that dismissal is warranted because (1) a short and plain statement was not provided, (2) as a matter of law the Candrians cannot proceed with a shareholder derivative claim, and (3) under Ninth Circuit standards declaratory relief is not appropriate. Additionally, the Court declines at this time to consider Defendants' argument regarding whether the Candrians have stated claims upon which relief can be granted pursuant to the *Twombly/Iqbal* standard; however, the Court will dismiss the claims for an Accounting, Ultra Vires Acts, Defamation, and Receiver as the Candrians have either withdrawn or failed to include these claims in the TAC.

C. *Mandatory Arbitration*

Defendants point out that the Candrians' claim of a Breach of Covenant of Good Faith and Dealing refers to the Agreement and Plan of Reorganization:

> Plaintiffs entered into the Agreement and Plan of Reorganization and Buy-Sell Shareholders Agreement with the reasonable expectation that their fellow shareholders would act in good faith and consistent with the agreements between the parties.

SAC, Doc. 36, p. 23, ¶ 187.[4] That arbitration provision provides:

---

[4]Defendants point out that the SAC contains additional references to the Agreement.

- 9 -

> The [arbitration] procedures specified herein shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this agreement; provided, however, that a party may seek a preliminary or permanent injunction other preliminary judicial relief, if in its judgment such action is necessary to avoid irreparable damages or other equitable relief, including specific performance.

SAC, Ex. A, Doc. 36-1, p. 52. The Court accepts the provision as including an additional "or":

> The [arbitration] procedures specified herein shall be the sole and exclusive procedures for the resolution of disputes between the parties arising out of or relating to this agreement; provided, however, that a party may seek a preliminary or permanent injunction **or** other preliminary judicial relief, if in its judgment such action is necessary to avoid irreparable damages or other equitable relief, including specific performance.

SAC, Ex. A, Doc. 36-1, p. 52, modified.[5] Further, the APR recognizes other documents were executed at the same time:

> "<u>Ancillary Agreements</u>" means any agreement executed at the Closing in connection with the transactions contemplated by this Agreement.

*Id.*, at 48.

The Federal Arbitration Act ("FAA") was enacted to "overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA reverses "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Adams*, 279 F.3d at 892, *citing Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Chiron Corp. v. Ortho*

---

[5]The Candrians' quotation of this provision is also modified to include the "or." *See* Response (Doc. 53), p. 13.

- 10 -

*Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (the FAA mandates district courts to direct parties to arbitration on issues as to which arbitration has been agreed upon). When evaluating the validity of an arbitration agreement, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Furthermore, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Arizona recognizes "a strong public policy, both federal and state, favoring arbitration." *Cooper v. QC Financial Services, Inc.*, 503 F.Supp.2d 1266, 1289 (D.Ariz. 2007), *citations omitted*. The Candrians do not contest the existence of the arbitration agreement or that it is not enforceable. This Court must decide, therefore, "whether . . . [the] controversy is subject to an agreement to arbitrate." A.R.S. § 12–3006(B).

The Court of Appeals of Arizona has stated:

> The arbitration clause at issue here encompasses "any" controversies or disputes "aris[ing] out of or relating to" the Partnership Agreement. It is "the paradigm of a broad clause." *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir.1995) (describing a clause requiring arbitration of "[a]ny claim or controversy arising out of or relating to th[e] agreement" as "the paradigm of a broad clause"). The duty to arbitrate attaches not only to controversies arising under the Partnership Agreement, but also to disputes "relating to" that agreement. "Relating to" is broader than "arising from." *See Bama's Best Hous., Inc. v. Hodges*, 847 So.2d 300, 303 (Ala. 2002) (an arbitration clause "that applies to claims 'arising out of or relating to' the contract ... has a broader application than an arbitration clause that refers only to claims 'arising from' the agreement"); *Karl Storz Endoscopy–Am., Inc. v. Integrated Med. Sys., Inc.*, 808 So.2d 999, 1013 (Ala.2001) ("[I]t is often observed that the words 'relating to' in the arbitration context are given a broad construction.").

*Sun Valley Ranch 308 Ltd. Partnership ex rel. Englewood Properties*, 231 Ariz. 287, 294 P.3d 125 (App. 2012); *OHI (IOWA), Inc. v. Usa Healthcare-Iowa, LLC*, 780 N.W.2d 248 (Iowa App. 2010), unpublished (recognizing courts broadly interpret "arising out of or relating to" clauses). In discussing such a provision, a treatise states:

> [A] clause in a stock purchase agreement requiring arbitration of "any dispute between any of the parties which may arise hereunder or under any agreement referred to as an exhibit herein" was found not to be limited to arbitration of contract claims, but to require arbitration of all claims asserted against the seller including fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good

- 11 -

> faith and fair dealing, and outrage. The court looked to the factual allegations in the complaint and found every claim targeted the fact that the plaintiffs did not receive the amount of money that they thought they should have for their stock and therefore, the claims all arose under the agreement. Generally, broadly worded clauses encompass all claims related to or arising from the underlying contract.

1 Domke on Com. Arb. § 15:6 (2013), *footnotes omitted*.

The Candrians assert that when the APR referred to all documents, the APR used the term ancillary agreements. *See e.g.* SAC, Ex. A, Doc. 36-1, p. 9 §§ 3.4 and 3.6(b). Indeed, the Candrians argue that by "specifically not suing [this agreement and the ancillary agreements] in Section 10.8, it evinces an intent by the parties that this arbitration agreement only deals with this agreement." 10/16/13 Transcript, Doc. 101, p. 22. However, this argument does not address that the parties chose to include an arbitration agreement for disputes arising out of or <u>relating to</u> this agreement. By inclusion of this phrase, the parties werre evidencing an intent to broadly interpret the arbitration agreement. In other words, although the agreement to arbitrate does not include reference to Ancillary Agreements, the inclusion of the "arising out of or relating to" clause requires a broad interpretation of the arbitration agreement. The Court finds every claim alleged by the Candrians is based on the Candrians disputing whether the APR, its Ancillary Agreements, or its modifications are being complied with. In other words, the disputes arise out of or relate to the APR and are subject to the agreement to arbitrate.

However, the Candrians did not violate the arbitration agreement by seeking a preliminary or permanent injunction or other preliminary judicial relief, if in their "judgment such action is necessary to avoid irreparable damages or other equitable relief, including specific performance." SAC, Ex. A, Doc. 36-1, p. 52. There is no indication this provision is subject to judicial review; rather, the provision clearly provides it is within the Candrians' judgment and discretion.

This Court has already determined preliminary injunctive relief is not appropriate. While a resolution of the merits may obviate the request for injunctive or declaratory relief, such relief may still be appropriate following arbitration. The Court will grant the motion to dismiss and administratively close its file in this matter; if appropriate, the Candrians may

seek to re-open the case to resolve any permanent injunctive or other equitable relief issues that may result from arbitration.[6]

IV. *Conclusion*

Because Defendants' Motion to Dismiss is well-taken as to the lack of personal jurisdiction of Conklin and Hester and the arbitration agreement, the claims against Conklin and Hester and the claims subject to arbitration are "futile." However, as the agreement to arbitrate provides the Candrians may seek judicial resolution of injunctive or other equitable relief, the claims may not be entirely futile. The Court will, therefore, grant the Candrians leave to file the TAC. Rather than directing the Clerk of Court to docket the proposed TAC, CM-ECF Policies and Procedures Manual, § II.H, the Court will direct the Candrians to file a verified/signed copy of the TAC.

Further, because this matter is subject to arbitration, the Court will direct the Clerk of Court to administratively close its file in this matter. The parties may seek to re-open this matter for judicial resolution of injunctive or equitable relief.

Accordingly, IT IS ORDERED:

1. Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 78) is GRANTED. The Clerk of Court shall not docket, pursuant to § II.H. of the CM-ECF Policies and Procedures Manual, the proposed Third Amended Complaint (Doc. 78-1). The Candrians shall file a verified/signed copy of the proposed TAC within 10 days of the date of this Order.

2. Defendants' Motion to Dismiss (Doc. 42) is GRANTED IN PART AND DENIED IN PART.

3. Defendants Conklin and Hester are DISMISSED for lack of personal jurisdiction.

---

[6]Alternatively, if appellate review will be sought, the parties may request this Court enter judgment.

1     4.      All claims are DISMISSED pursuant to the agreement to arbitrate.

2     5.      Plaintiffs' Motion for Status Conference (Doc. 76) is DENIED AS MOOT.

3     6.      Plaintiff's Motion for Limited Expedited Discovery and to Schedule a Rule 26(f) Planning Conference and a Rule 16(b) Case Management Conference (Doc. 79) is DENIED AS MOOT.

7.      The Clerk of Court shall close its file in this matter.

DATED this 21st day of November, 2013.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge